**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.G., S.G., and L.G.**

**No. 21-0980** (Mason County 20-JA-37, 20-JA-38, and 20-JA-39)

**MEMORANDUM DECISION**

Petitioner Father J.G., by counsel Paul A. Knisley, appeals the Circuit Court of Mason County's November 9, 2021, order terminating his parental rights to B.G., S.G., and L.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Tonya Hunt Handley, filed a response on behalf of the children also in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating his parental rights after he completed his improvement period and when there were less restrictive alternatives available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2020, the DHHR filed a child abuse and neglect petition alleging that the mother burned the children with cigarettes and that the parents medically neglected the children's burn marks and other health conditions. According to the petition, the mother denied burning the children and would not speak further to the investigating Child Protective Services ("CPS") worker about the allegation. Petitioner stated that he believed the children received the marks by playing. The paternal grandmother stated that the oldest child, L.G., reported to her that the mother burned him with cigarettes. The grandmother took L.G. for medical care, and the treating physician found that his marks were infected and prescribed medication for the untreated skin infections. The DHHR also alleged that the parents lacked the parenting knowledge and skills to care for the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

children and failed to provide them with appropriate housing. Finally, the DHHR alleged that the mother has a history of CPS referrals for having a dirty, cluttered, and unsanitary home; that there has been an open CPS case with the family since September of 2018; and that despite services in the home, the parents had failed to maintain an appropriate living environment or meet the children's medical needs. Thereafter, the parents waived their rights to a preliminary hearing.

The parents completed their parental fitness and psychological evaluations in late July of 2020. The examiner determined that the prognosis for petitioner attaining "minimally adequate parenting" was "poor." The evaluator gave numerous recommendations, which were incorporated into petitioner's case plan.

By August of 2020, the court held an adjudicatory hearing during which the parents stipulated to the allegations of abuse and neglect contained in the petition. The court accepted the stipulations and adjudicated the parents as abusing parents. In September of 2020, the multidisciplinary team ("MDT") learned that the children had exhibited concerning behaviors after visits with the parents, and that L.G. was in therapy due to his aggression with his siblings and the foster family's pets. The visitation provider reports in October of 2020 stated that petitioner's supervision of the children was satisfactory but that he had trouble with properly correcting the children's behavior without yelling and threatening them. Further, the report stated that petitioner had to be prompted to change B.G.'s and S.G.'s diapers and to take the children to the bathroom when needed. Additionally, the report stated that petitioner failed to bring activities, food, and drinks for the children, and did not appear motivated in building a bond with the children.

In November of 2020, the circuit court granted the parents post-adjudicatory improvement periods. The terms of petitioner's improvement period included the following: submit to random drug screens; complete anger management classes; complete parenting skills classes; participate in supervised visitations and demonstrate an attachment to the children; follow the recommendations contained in the parental fitness evaluations, including demonstrating an "ability to independently establish and maintain a habitable home environment in a single location for a minimum of six months."

According to a visitation provider report in December of 2020, the parents were given separate visits with the children due to their fighting and arguing with each other. The provider report from March of 2021 stated that the parents had to be repeatedly reminded to supply the children with meals and not just snacks during visits. The report also stated that petitioner was still seeking housing. In April of 2021, the visitation provider's report stated that the parents had to be reminded to bring changes of clothes and diapers for the children.

The court held a review hearing in May of 2021, wherein the guardian expressed concerns that petitioner had not obtained housing. The court extended the parents' improvement periods finding that they had not met all the terms and conditions of their improvement periods. On September 1, 2021, the DHHR filed motions to revoke the parents' improvement periods, citing their failure to maintain appropriate housing, bring proper food and necessities for visits, or demonstrate an adequate attachment to the children.

The court held a hearing on the DHHR's motion to terminate the parents' improvement periods in early September of 2021. A visitation service provider testified that he supervised three visits for the parents in August of 2021. He stated that he had not been to petitioner's home because it remained unfinished and had only conducted visits in a public park. He further described a remote video visit where the parents were lying on their bed while petitioner was shirtless, the mother caressing his ear, and they were acting very tired. They largely kept their eyes shut and barely spoke or interacted with the children. The provider also explained that the parents were required to supply spare clothes or diapers but always relied on the backup things sent by the foster family.

The visitation supervisor testified that the goal in these cases is to eventually increase visitations to work toward reunification. However, she stated that increased visits never occurred due to numerous issues with the parents.

The CPS worker testified that the MDT held a meeting in June of 2021, during which the members discussed the children's special needs and interventions with Birth to Three, a program to help with children's behavioral, developmental, and health needs. A Birth to Three worker attempted to set up a meeting with the parents, but they failed to confirm or attend the meeting. The CPS worker stated that the parents never graduated to more than two three-hour visits a week. She stated that petitioner told the MDT that he obtained a trailer in May of 2021, but that he had to fix holes in the floor, replace walls, install carpet, and connect waterlines.

Petitioner testified that he applied for subsidized housing with the local housing authority, but his application was denied because he owed a balance from a previous rental agreement. Petitioner stated that he eventually obtained a trailer from his sister but that it needed repairs. He stated that he had a limited income and had run out of money to finish the repairs. When asked what he did to obtain additional income, petitioner stated only that he worked odd jobs and that he did not contact the DHHR for assistance because he was "confused on who to get a hold of." At the close of evidence, the court held the DHHR's motion to terminate the parents' improvement periods in abeyance and set the matter for disposition.

The circuit court held a final dispositional hearing in October of 2021. At the beginning of the hearing, the court found that the parents had not successfully completed their improvement periods based upon the evidence adduced at the prior hearing. The DHHR presented evidence that petitioner's home still needed numerous repairs. The CPS worker visited petitioner's home in early September of 2021 and noted that the porch had several weak spots, which could fall in. After knocking on the door, the worker heard petitioner shout, "you dirty f*cking sl*t." The worker was unsure if petitioner had referred to his dog or her. Once inside, the worker noticed dog feces and urine on the living room floor as well as a very large television and game console complete with numerous video games. The living room appeared cluttered and there was a chainsaw sitting in the room. There were piles of dirty dishes in the kitchen sink, food on the floor and on the counters, and also several cockroaches in the refrigerator. The bathtub was filled with repair supplies like copper wire, and petitioner stated that he had no running water. She stated that petitioner had made no progress since the last visit to the home.

Petitioner testified that his trailer was almost finished but that there was still no water service. He explained that he was in a dispute with the city regarding the water service. Petitioner stated that he obtained a puppy and that it was not yet house trained when the worker saw the dog feces and urine. Petitioner testified that he had treated the trailer for cockroaches and believed that the home was ready for the children.

By order entered on November 9, 2021, the circuit court found that despite the parents participating in parenting skills classes, they had not shown an ability to properly parent the children, as evidenced by the visitation providers' reports and visitation providers' testimony. The circuit court noted that the children were special needs, and the parents had not followed through with an appointment with a Birth to Three service provider. Further, the court found that petitioner failed to address his inability to keep a clean, safe, and appropriate home for the children. The court noted that the DHHR was obligated to seek termination of parental rights when a child has been in foster care for fifteen of the most recent twenty-two months, and that the children had been placed in foster care since June of 2020. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. The court terminated petitioner's parental rights to B.G., S.G., and L.G. Petitioner appeals the circuit court's November 9, 2021, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights when he substantially completed the terms of his improvement period. Petitioner contends that the circuit court ignored his challenges with obtaining housing during the COVID-19 pandemic and that he obtained the only housing that he could afford. According to petitioner, the only item that remained to complete for his improvement period was adequate housing, and he had made almost all repairs to the trailer by the dispositional hearing. Petitioner notes that there was only one visit

---

[2]The mother's parental rights terminated below. The permanency plan for the children is adoption by their foster family.

4

conducted of his home during the entire case, and that it occurred the day after the September 9, 2021, hearing on the DHHR's motion to terminate his improvement period. As such, petitioner contends that the DHHR did not visit the home again prior to the final dispositional hearing in early October of 2021. Petitioner points to the CPS worker's testimony at the final dispositional hearing and asserts that it was clear that the DHHR "did the home inspection with the intention of finding the home unfit." He claims that the issues remaining with the home were "temporary" and could have been "easily rectified in a short period of time." As such, petitioner argues that the circuit court's finding under West Virginia Code § 49-4-604(c)(6) that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected *in the near future*" was improper. (Emphasis added.) Finally, petitioner argues that there was no testimony at the final dispositional hearing to support a finding that petitioner failed to maintain a bond with the children.

Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, the record supports, and petitioner concedes on appeal, that he failed to obtain adequate, safe, and hygienic housing for the children during his improvement period and extension thereof. "When any improvement period is granted to a [parent] . . . the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." W. Va. Code § 49-4-610(4). The record establishes that the DHHR attempted to help petitioner obtain suitable subsidized housing, but petitioner owed money to the local housing authority and was declined. Nothing in the record indicates that petitioner requested financial assistance from the DHHR regarding this back rent, and instead, petitioner obtained a trailer from his sister in May of 2021. The record also shows that petitioner did not alert the MDT of this purchase until June of 2021. Again, there is nothing in the record indicating that petitioner raised the issue of financial assistance with the DHHR. Indeed, during his testimony at the September of 2021 hearing, petitioner stated that he did not contact the DHHR regarding repairing his home because he was "confused on who to get a hold of"—a curious assertion in view of his approximately eight-month-long participation in an improvement period. Petitioner vaguely blames the COVID-19 pandemic for his delay in obtaining housing but ignores his own delays and failure to communicate with the DHHR regarding the process.

Petitioner argues that he almost had the trailer ready by the final dispositional hearing, and that the court erred by not giving him more time to finish correcting the issues with the waterlines. However, considering the length of time it took petitioner to obtain housing and make other repairs, coupled with the fact that petitioner failed to keep the home clean and prioritized getting a puppy over having a safe, clean, and appropriate home for his children, the court determined that petitioner was not likely to address the issues in the near future. This finding is a credibility determination, which we decline to disturb on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility

5

through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Moreover, although there was no testimony at the final dispositional hearing regarding petitioner's parenting abilities and bond with the children, the record shows that no in-home visits were ever able to occur with petitioner in his home. Additionally, the evidence shows that although petitioner attended visits, he often failed to interact with the children and instead watched the children play with each other. Additionally, the court found that petitioner had a bond with his children but stated its concern with petitioner's ability to parent. As visits were never able to be increased or moved to petitioner's home, the court lacked valuable information as to whether petitioner could implement anything he learned in his parenting skills classes. Furthermore, petitioner showed no interest in the children's special needs as he failed to follow through with the appointment with the Birth to Three provider.

Here, petitioner demonstrated an inadequate capacity to solve the problems of abuse and neglect on his own or with help. Although petitioner participated in some services, the overwhelming evidence demonstrates that he failed to adequately progress in those services or, ultimately, remedy the conditions of abuse and neglect. Petitioner showed no long-lasting progress in his ability to parent or maintain a safe, clean, and hygienic home. Further, petitioner fails to acknowledge the statutory limits for improvement periods. *See* W. Va. Code § 49-4-610 ("Notwithstanding any other provision of this section, no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph."). By the dispositional hearing, the children had been in the foster family's care for sixteen months, and the court found no compelling circumstances to extend petitioner's improvement period yet again.

Finally, insomuch as petitioner argues that the circuit court should have imposed a less restrictive alternative to the termination of his parental rights, this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Such findings are sufficient to support the termination of his parental rights, and we find no error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 9, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn